**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **Seth Schmidt,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **CASE NO.:** _____ |
| **vs.** | **:** | |
| | **:** | |
| **The Walt Disney Company,** | **:** | |
| **Disney Parks, Experiences and** | **:** | |
| **Products, Inc., Reedy Creek** | **:** | |
| **Improvement District, Walt** | **:** | |
| **Disney Parks and Resorts U.S., Inc.,** | **:** | |
| | | |
| **Defendants.** | | |
| _____ | | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, by and through the undersigned counsel, SETH SCHMIDT, and files this Complaint against Defendants THE WALT DISNEY COMPANY, DISNEY PARKS, EXPERIENCES AND PRODUCTS, INC. (also "DPEP"), REEDY CREEK IMPROVEMENT DISTRICT (also "RCID") and WALT DISNEY PARKS AND RESORTS U.S., INC., (hereinafter referred to corporately as "Disney"), and alleges as follows:

**INTRODUCTION**

For Mr. Schmidt, Disney made his dreams come true. He found his dream job as a part of Disney's cast and excelled in his work for the thousands of Disney guests he served. Disney has been for decades a preferred place to work, carefully creating and

1

maintaining an environment of harmony and inclusion.

In 2020, Disney's cast was rocked by the Covid-19 pandemic, but came together as Disney reopened its doors to guests and worked hard to make magic again. But, in only one year's time, by fall of 2021, Disney targeted cast members who declined Covid-19 vaccinations, including Mr. Schmidt who filed exemptions on grounds of religious faith, stating that taking these injections would violate their deeply held convictions.

Disney could and should have chosen to accommodate these religious beliefs in practice; indeed, to do so would have been to follow state and federal law, Disney's core principles and company policies, including its aspirational Five Keys. Instead, Disney imposed harsh, unreasonable, and discriminatory "Augmented Health and Safety Protocols" enforced arbitrarily against Plaintiff. These protocols made clear that Disney irrationally feared Mr. Schmidt as perpetually exposed or infectious with disease and a perpetual danger to other cast and guests.

When Mr. Schmidt objected respectfully and consistently to Disney's unlawful discrimination against him, Disney failed to remediate its actions contrary to law. Instead, Disney suspended and terminated Plaintiff for "Speaking Up" in accordance with law and Disney's own company policy.

## FACTUAL ALLEGATIONS

### Parties, Jurisdiction, and Venue

1. At all times material hereto, Plaintiff Seth Schmidt was a resident of Osceola County, Florida and employed by Walt Disney Parks & Resorts, U.S., Inc.

2. **The Walt Disney Company** was organized in Delaware, is headquartered in Burbank, California, and is doing business in Florida, particularly in Orlando and Osceola counties, through its wholly-owned subsidiaries, *inter alia* Defendants: **Disney Parks, Experiences, and Products, Inc.**, a California corporation organized in current form in 2008 and registered in Florida; **Walt Disney Parks and Resorts U.S., Inc.,** a Florida corporation organized in 1997.

3. **Reedy Creek Improvement District** is a local government *special district* established in 1967 by H.B. 486, Chapter 67-764, and carries out local government functions exclusively under Disney authority on Disney's property located within Orange and Osceola counties.

4. This case is severed from *Barbara Andreas, et. al v. The Walt Disney Company, et. al,* State Court Case No. 2022-CA-001697 (Osceola County), removed to MDFL – Orlando Division by Defendants on January 20, 2023, Federal Court Case No. 6:23-cv-00107-ACC-EJK.

5. The Court entered an order severing the case into seven separate lawsuits on January 24, 2023, and instructed that Plaintiff Andreas would retain Federal Case Number 6:23-cv-107 (Order, January 24, 2023, Docket No. 7 ¶ 1).

6. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343. Mr. Schmidt's federal claims arise under 42 U.S.C. § 2000e-5(f), of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. § 1981a; and under 42 U.S.C. §§ 12117 and 12203, of the Americans with

Disabilities Act of 1990, as amended ("ADA").

7. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over Defendants in this matter, as all Disney entities herein named Defendants are either Florida corporations or deemed a resident foreign company that conducts its main business in Osceola and Orlando counties; and RCID, as a statutorily created special "district" local government, is subject to the jurisdiction of Florida courts, through which Disney corporately is also a local Florida governmental entity, subject to the jurisdiction of Florida courts.

9. At all relevant times to the allegations in this Complaint, Disney is an employer maintaining a minimum of fifteen employees and is engaged in an industry affecting commerce, pursuant to 42 U.S.C. §2000e(b), (g), (h) and 42 U.S.C. §12111(2), (5).

10. Venue is proper pursuant to 28 U.S.C. §1391, because the wrongful acts and omissions of Disney giving rise to Mr. Schmidt's claims occurred in the District where Defendant maintains its central office, and because Defendant is deemed to reside in this District pursuant to § 1391(c)(2).

11. All conditions precedent to this action have occurred, have been performed, or have been waived.

**Disney's Covid-19 Vaccinate or Terminate Mandate**

12. When the national state of emergency over the Covid-19 pandemic was announced, Disney closed temporarily beginning March 15, 2020, and reopened less than four months later.

13. Upon reopening, Disney's safety protocols for Covid-19 included use of double face masks then acceptable by the CDC (cloth accepted) and social distancing by cast members and guests.  For only certain cast, face shields or goggles might be required based on proximity to guests.

14. Cast who were feeling sick or who tested positive for Covid-19 were to isolate at home for five days or until the end of symptoms; wear facial covering at work for an additional five days and socially distance by 6 feet when removing facial covering; and report Covid-19 in the HR cast member portal (as well as to DPEP.Contact.Tracing@disney.com if they reported sick due to positive test). Those who were "unable to wear a face covering while working" were required to stay at home and not report to work for ten days following exposure or until after symptoms ceased.  **Exhibit A**[1]

15. On July 30, 2021 Disney announced to its entire U.S. cast a vaccinate or terminate Covid-19 vaccination policy.  According to the policy, all subject cast members

---

[1] These protocols remained in place, even after Covid-19 vaccination was publicly available in late 2020, and even after Disney's vaccinate or terminate mandate was issued in July 2021, and even simultaneously to Disney's current Augmented Protocols for cast unvaccinated for Covid-19.  At no time did Disney require guests to disclose or verify their Covid-19 vaccination status.

would have to "verify" full vaccination status by a company deadline of September 30, 2021. **Exhibit B**

16. Upon information and belief, Defendant DPEP is an entity that has significant design and implementation authority as well as enforcement oversight regarding Disney's vaccine mandate in Florida, including but not limited to "restrictions" and "accommodations" requested against the Covid-19 shots, despite the mandate announcement coming from Mr. Paul Richardson, Sr. Executive Vice President and Chief HR Officer at Defendant The Walt Disney Company.

17. The Covid-19 vaccination was "a condition of [] continued employment by The Walt Disney Company" and specified that "fully vaccinated" meant two weeks from the final dose of any two-dose Covid-19 vaccination or the sole dose of the single-dose option. The Notice also specified that, until impact bargaining completed with union member employees, the mandate only applied as to non-union employees. Employees subject to collective bargaining agreements would be subject to terms as specified in their respective MOUs reached on the mandate.

18. Apparently, the dire nature of the urgency of obtaining the Covid-19 vaccination was subject to effective negotiation. Disney informed all cast in September 2021 that various unions involved in representation of cast members had reached agreements regarding extended deadlines, including but not limited to: STCU (Service Trades Council Union) and AEA (Actors Equity Association) extended the deadline from September 30 to October 22; AFM

(American Federation of Musicians) Local 389 to October 31; CMC (Craft Maintenance Council) and BVCC (Buena Vista Construction Company) secured November 1 extended deadline; and SPFPA (Security, Police & Fire Professionals of America) Local 603 secured a November 7 deadline. Other unions were still in negotiations. Mr. Schmidt was a member of Unite Here Local 362.

19. From the initial announcement until November 18, 2021, cast members were bombarded with many email notices, as well as managerial texts and warnings, to "verify" their Covid-19 vaccination status as fully vaccinated in the online Cast Member Hub.

20. On November 19, Governor DeSantis signed into law Fl. Stat. §381.00317 and §112.0441, rendering unlawful any further "vaccinate or terminate" Covid-19 mandates by Florida employers.

**Disney's Discriminatory Augmented Health & Safety Protocols**

21. That same day, Disney sent an apparently targeted email **Exhibit C,** to cast members who reside or work in Florida and had "not yet verified [] COVID-19 vaccination status with the company" nor "been granted an accommodation." The email stated that Disney would "pause the enforcement" of the mandatory vaccine policy for "Florida-based Cast Members and employees" due both to the new Florida law passed and OSHA's Emergency Temporary Standard (issued November 5, 2021) being stayed by the U.S. Court of Appeals for the Fifth Circuit on November 12, 2021. The

7

email also pointed out that Disney determined 90% of its Florida staff had complied and were fully vaccinated at that time.

22. Disney still required Covid-19 unvaccinated employees to verify their unvaccinated status through TrustAssure process, and stated plainly that those who did not verify status would be considered unvaccinated.  The notice also provided a link to "safety protocols" cast members who were not verified as "fully vaccinated" would be required to follow, "including face coverings and physical distancing," with no additional details thereto.

23. The TrustAssure "verification" program implicates Fl. Stat. § 381.00316's prohibition on business or governmental entities requiring "any documentation certifying COVID-19 vaccination or postinfection recovery to gain access to, entry upon, or service" from the business or governmental entity.

24. Moreover, in the terms of the enforcement of the "Augmented Protocols," the policy is a *de facto* Covid-19 vaccine mandate, in violation of Fl. Stat. § 381.00317 and § 112.0441. From a FAQ for leadership, it is clear the Augmented Protocols are not an exemption under the Florida law, are not voluntarily applied for, and refusal to comply despite other bases for exemption will result in discipline and termination:

8

**Why are some Cast required to wear a N95 mask instead of a Disney-supplied face covering?**
These safety protocols are in place for those who have not verified their vaccination status through TrustAssure. A N95 mask is required for higher contact roles with indoor extended interaction with another individual.

**What happens if I don't follow the Augmented Safety Protocols?**
Non-compliance with the Augmented Safety Protocols may result in disciplinary action, up to and including termination.

**Do these Augmented Safety Protocols apply to Cast who verified their vaccination status through TrustAssure?**
No.

25. Over time, and specifically in 2021 through 2022, after vaccination became available to the public, Disney modified its general Covid-19 safety protocols, depending on location and vaccination status – dropping masking outdoors, then dropping social distancing. On November 8, 2021, vaccinated cast would no longer be required to wear facial covering outside except "on-stage", meaning around guests.

26. By mid-February, 2022, vaccinated cast were no longer required to wear any facial coverings in any location except on Disney transport. Ultimately by mid-April even the restriction to wear facial coverings on Disney transport lifted for vaccinated cast.

27. On February 24, 2022, the Florida Department of Health issued new guidelines no longer advising businesses to require facial coverings for any employees, on the grounds there is no proven significant clinical benefit against (Covid-19) infection for facial coverings among the general population.

28. Notwithstanding this state-issued health guideline, Disney continued its own policies until May 10, 2022, when it announced that vaccinated cast could follow

local government mask policies. Unvaccinated employees like Mr. Schmidt were still required to abide by the Augmented Protocols, despite state health guidance.

29. Cast members like Mr. Schmidt quickly learned that Disney's policy in lieu of a now-unlawful "vaccinate or terminate" scheme was not status quo under general Covid-19 safety protocols, but a new discriminatory scheme that singled out visually and physically cast members like Plaintiff who were unvaccinated for Covid-19. Disney also declared their new "Augmented Health & Safety Protocols" (hereinafter "Augmented Protocols") as "accommodations" for some approved exemptions as of the fall of 2021.

30. The Augmented Protocols now suddenly enforced on Plaintiff consisted of harsh isolation and restrictions, making it nearly impossible to find a compliant manner and location in which to eat or drink while on shift. The Augmented Protocols effectively added to and made permanent on a daily basis, indefinitely, the Disney Covid policy for Covid-19 positive cast, cast who were symptomatically sick, and cast who were known to have been exposed to Covid-19. **Exhibit A.**

## COVID-19 Augmented Health & Safety Protocols

Employees and Cast Members who are required to follow the COVID-19 Augmented Health and Safety Protocols must adhere to the following:

- Whether indoors or outdoors, a Disney-supplied face covering must be worn at all times. In addition, when indoors and within three (3) feet of others, a face shield or safety glasses must also be worn.
- You may only remove your face covering if:
  - You are alone in an office with the door shut.
  - You are performing tasks in the approved Green Zone.
  - You are actively performing onstage in a COVID-blocked entertainment offering and maintaining six (6) feet of distance from others.
  - You are six (6) feet of distancing from others and actively eating or drinking.
- If eating or drinking in the workplace, you must remain no less than six (6) feet from others in order to remove your face covering.
- Instead of a Disney-supplied face covering, employees and Cast Members in select high-contact roles may be required to wear a Disney-supplied N-95 mask instead and at all times, both indoors and outdoors. **In addition, when indoors and within three (3) feet of others, a face shield or safety glasses must also be worn.**

*Please note: Your leader and/or Human Resources (HR) will inform you if you are required to follow the Augmented Health & Safety Protocols. This guidance applies only to those employees and Cast Members who have been notified by their leadership and/or who have received an approved accommodations through the Employee Relations process.*

31. None of the written versions of the Augmented Protocols that Mr. Schmidt has seen specifies any definition of cast members subject to the Augmented Protocols. None show a date of enforcement nor a date by which these harsh restrictions will be lifted, nor if any conditions precedent may trigger the termination of these Protocols.

32. The Augmented Protocols changed from time to time, and on May 2, 2022, the extreme facial coverings were enforceable indoors as to "select roles" which "may be designated as high contact"; but guests and unvaccinated staff could elect not to use any facial covering. Additionally, all unvaccinated life guards, both indoors and outdoors "must use a ViroMax viral and bacterial filter while

actively performing CPR."

33. The federal Occupational Health and Safety Administration ("OHSA") provides guidance and regulation, as well as enforcement of compliance regarding workplace safety. Disney's requirement that certain (Covid-19 unvaccinated) employees wear N-95 PPE, indicates Disney's reliance on particular OSHA standards for handling hazardous substances in the workplace. Disney's accommodations, named "permanent restrictions", for those unvaccinated for religious reasons required cast members to enter the "OSHA respiratory program" at Disney.

34. Whether an (Covid-19) unvaccinated cast member is required to enter the respiratory program or not is ostensibly based on whether the cast member him or herself was in a "high contact role," not whether there were environmental hazards or toxins from which to protect cast members in the workplace. **Exhibit D**

35. However, the OSHA rules regarding hazardous substance precautions are not those applicable to OSHA guidance regarding Covid-19 precautions. For example, workplaces deemed to have possible toxic materials and contaminated air include shipyards, marine terminals, and construction.[2] Disney "restrictions" requiring adherence to a respiratory program were required in public-facing

---

[2] See, eg: https://www.osha.gov/coronavirus/safework#ftn1, last accessed December 21, 2022, *cf* Standard No. 1910.134, *Personal Protective Equipment; Respiratory protection,* at https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.134, last accessed December 21, 2022.

hospitality and service roles in theme parks, resorts and other non-industrial, non-medical services workplaces.

36. Indeed, Disney's requirement that Covid-19 unvaccinated, "unverified" cast with religious exemption requests like Plaintiff wear respirators under the Augmented Protocols contravenes OSHA standards for workplace safety in the presence of hazardous substances. Proper training must be given when wearing respirators like N95 masks, and OSHA, as well as respirator manufacturers recognize the likelihood of "hazards associated with the use of the respirator," such that extended use of the facial covering without respite is against proper guidance.[3]

37. Manufacturer guidance regarding respirators like N95 masks also clearly warn that the respirators may be used in the event of "exposures to certain airborne biological particles (e.g. viruses, mold, *Bacillus anthracis, Mycobacterium tuberculosis,* etc) but cannot eliminate the risk of contracting infection, illness, or disease." The instructions further specify "limitations" of use of PPE, including that the "respirator is designed for occupational/professional use by adults who are properly trained in their use and limitations. Individuals with a compromised respiratory system…should consult a physician and complete a medical evaluation prior to use." Respirators also have a "shelf life" or expiration date in their packaging and must be stored in proper temperature and humidity conditions. **Exhibit E.**

---

[3] *Id.* and see **Exhibit E,** 3M Manufacturer specifications, user instructions, and warning regarding Aura™ Particulate Respirator N95.

38. By early August, the Centers for Disease Control ("CDC") issued its advisory that there was no health or safety basis upon which to engage in different policies or treatment toward the Covid-19 vaccinated and unvaccinated.

39. On August 16, 2022, Disney finally dropped enforcement of its harsh and discriminatory Augmented Protocols.  **Exhibit F** This announcement came within days of OSHA's Guidance Update reflecting CDC changed guidance against disparate treatment of Covid-19 vaccinated and unvaccinated.  However, the announcement made no admission of the unlawful nature of the humiliating and discriminatory Augmented Protocols.  Rather, the notice indicated Disney was free to engage in open discrimination in the future in the same fashion: "These protocols are subject to change at any time.  Employees represented by a union/Return-to-Work Agreement, please consult your leader to understand what protocols apply to you."

### Reedy Creek Improvement District

40. Defendant The Walt Disney Company acquired the land that became Reedy Creek Improvement District in the 1960s.  By 1966, the landowners – all Disney subsidiary business entities – petitioned the Circuit Court of the Ninth Judicial Circuit  for creation of the "Reedy Creek Drainage District under Fl. Stat. § 298, *et seq.*, which was then incorporated as a public corporation on May 13, 1966.

41. In accordance with Mr. Walt Disney's vision for the property, Disney then petitioned the Florida State Legislature for the creation of the "Reedy Creek Improvement District," which was a virtually autonomous local Florida

14

government as a *special district*, created by the Reedy Creek Improvement Act, signed into law on May 12, 1967.[4]

42. RCID is an entire district, or local government, that carries out all the basic functions of a local government with many of the powers thereof. Prior to the creation of RCID, these services for this region were originally and solely performed by the governments of Orange and Osceola Counties. These services include:

- Law enforcement - Disney contracts with Orange and Osceola County local law enforcement agencies
- Fire Department
- Environmental Protection - through the donation of land to the state for conservation easements
- Creation and Enforcement of its own building codes
- Utilities - wastewater treatment and collection, water reclamation, electric generation and distribution, solid waste disposal, potable water, natural gas distribution, and hot and chilled water distribution are managed through Reedy Creek Energy Services, which has been merged with the Walt Disney World Company
- Roads - Many of the main roads in the District are public roads maintained by the District, while minor roads and roads dead-ending at attractions are private roads maintained by Disney; in addition, state-maintained Interstate 4 and U.S. Highway 192 pass through the District, as does part of the right-of-way of County Road 535 (formerly State Road 535).
- Transportation - Disney provides transportation for guests and employees in the form of buses, ferries, and monorails, under the name Disney Transport. In addition, several Lynx public bus routes enter the District, with half-hour service between the Transportation and Ticket Center (and backstage areas at the Magic Kingdom) and Downtown Orlando and Kissimmee, and once-a-day service to more

---

[4] Chapter 67-764 created the Reedy Creek Improvement District, see https://www.rcid.org/wp-content/uploads/2015/10/RCID-Charter.pdf last accessed on December 21, 2022; Chapter 67-1104 established the City of Bay Lake; and Chapter 67-1965 established the City of Reedy Creek (later renamed as the City of Lake Buena Vista around 1970.)

points, intended mainly for cleaning staff. Half-hourly service is provided, via Lynx, to Orlando International Airport

43. Disney exercises complete control of RCID and enjoys a self-beneficial arrangement whereby it pays local taxes to the RCID, which in turn, reinvests that tax revenue into Disney enterprises and businesses. The United States Court for Middle the District of Florida has found that "[t]he evidence does not support the contention that Disney and Reedy Creek are completely separate entities that do not exert control over each other, rather than "common employers," "joint employers," or parts of an agent/principal relationship." *See Lang et. al v. Reedy Creek Improvement District*, 888 F. Supp. 1143 (M.D. Fla. 1995). Thus, under Florida Law, Defendant The Walt Disney Company, and collectively, Disney subsidiaries operating within Florida, constitute a local government entity, subject to Florida constitutional and statutory requirements of public employers.

44. The municipalities Bay Lake and Lake Buena Vista which are located within RCID function as company towns within the Disney company *district* under Florida law. RCID property is open for use by the general public, serving an average of 250,000 people in the Walt Disney World parks and resorts on a daily basis with over 75,000 employees in Florida alone.

45. Indeed, the state of Florida has now passed legislation stripping The Walt Disney Company of certain of its governmental power and autonomy through RCID. At the time of this filing, the bill as passed is pending action by Governor Ron

DeSantis.  See CS-HB9B.

## Mr. Schmidt's Employment with Disney

46. Plaintiff Seth Schmidt has worked at Disney for almost a decade before he was unlawfully terminated for refusing the Covid-19 vaccine on religious faith grounds.

47. Mr. Schmidt worked as an Operations ride host since 2013 at Disney's Hollywood Studios.  When Disney shut down during the 2020 Covid-19 pandemic, he was unable to continue his job remotely.  Thus, when Disney reopened the parks, Mr. Schmidt returned to in-person work as an "essential position" and abided by the Covid-19 protocols applicable to all cast members.

48. Then, in July 2021, when Disney imposed its Covid-19 mandate, Mr. Schmidt submitted his religious exemption request to Disney on September 5, 2021. **Exhibit G.**

49. The request for exemption was signed by Mr. Schmidt's pastor and expressly announced to Disney that Mr. Schmidt was exercising his constitutional, federal and state rights to assert an exemption on grounds of religious belief and practice. He stated, "My personal convictions are inspired by my study and understanding of the Bible, and personally directed by the true and living God. I am personally convicted that I should not receive any of the three Covid-19 shots presently authorized by the FDA under the Emergency Use Authorization." **Exhibit G**

50. Mr. Schmidt also clarified that he believes religious conviction in the matter of putting things into his body is a personal matter, and his study of scripture in

17

prayer dictated that he could not risk harm to his body: "We are commanded to take good care of [the body], not to defile it, and certainly not to introduce something into it that could potentially harm it." One manner in which the Covid-19 mRNA vaccines would violate Mr. Schmidt's religious beliefs is in how they "alter what God has made" as gene therapy. Finally, he also acknowledged it would be morally wrong for him to take injections in which "fetal stem cell lines from aborted babies were used in either the initial development and/or testing of the Covid-19 shots." He cited many scripture verses including, but not limited to: Acts 2:38-39; I Corinthians 3:16-17; I Corinthians 6:19-20; II Corinthians 5:10; II Corinthians 7:1; and Psalms 139:13-16. **Exhibit G**

51. Disney never responded or fully processed Mr. Schmidt's request for exemption on religious grounds. Instead, his exemption was "paused" when Florida law went into effect on November 19, 2021.

52. Disney then imposed the discriminatory Augmented Protocols on Mr. Schmidt, contrary to the policy applied to all cast members for Covid-19 safety protocols, under which he had been successfully performing his job functions for a year.

53. Mr. Schmidt felt highly ostracized by wearing face covering and safety glasses except when eating sufficiently distanced from other cast members. He noted that cast members began to talk about "the unvaccinated" and there was significant social rift in the cast.

54. On September 5, 2021, Mr. Schmidt submitted to Disney a statement declaring that Disney's coercion to take the Covid-19 vaccine was forcing him to get

18

medical treatment against his will and conscience and against his First Amendment constitutional right. He requested that a representative of Disney sign the statement "making clear the fact that from the moment I get the vaccine this corporation will be held responsible for any illness or sickness that results from the vaccine from this moment to the day of my death." **Exhibit H.**

55. No representative of Disney signed the document. Instead, Mr. Schmidt was called into a meeting on December 2, 2021 and asked why he was not complying with the Augmented Protocols. He was suspended for investigation.

56. On December 9, 2021, Mr. Schmidt was called back to his manager's office and informed that because he did not verify in the TrustAssure system, and he did not submit to the Augmented Protocol policy, he was terminated from his position.

57. Mr. Schmidt submitted his claims to the EEOC, simultaneously filing with the Florida Commission on Human Relations. He received his Notice of Right to Sue on October 11, 2022.

## COUNT I
## FLORIDA PRIVATE WHISTLEBLOWER STATUTE
### FL. STAT. §448.101, et seq.
*Against Defendants The Walt Disney Company; Disney Parks, Experiences and Products, Inc.; and Walt Disney Parks and Resorts, U.S., Inc.*

58. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

59. Florida Statute §448.102 prohibits an employer taking "any retaliatory personnel action against an employee because the employee has: (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in

19

writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice. (2)  Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer. (3)  Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

60. The statute defines "retaliatory personnel action" as "discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." Fl. Stat. §448.101(5).

61. Mr. Schmidt provided written notice to Disney of Disney's unlawful vaccine mandate and requested that a Disney manager sign a document holding Disney liable for any subsequent injury he would suffer as a result of being coerced to take the shot.

62. Mr. Schmidt has filed his claims under oath of religious discrimination and retaliation before the Florida Commission on Human Relations and/or EEOC, or both concurrently.

63. Disney was provided ample time to remediate its unlawful conduct, and refused

20

to do so, instead doubling-down on unlawful conduct and retaliation against Mr. Schmidt, suspending him "pending investigation."

64. Mr. Schmidt's requests for Disney to address his concerns and cease its discriminatory policies went unanswered.

65. Mr. Schmidt never had a proper investigation of his claims and was subsequently terminated on pretextual grounds. Disney's suspension and termination of Plaintiff is retaliatory for his vocal and persistent, lawful challenges to Disney's unlawful conduct.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

**COUNT II**
**FLORIDA WHISTLE-BLOWER'S ACT**
**FL. STAT. § 112.3187, et seq.**
*Against All Defendants*

66. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

67. In the alternative to Disney as a private business, as pled in this Complaint, Defendant The Walt Disney Company, by virtue of its total control and ownership over local Florida public entity and governmental agency RCID, is a

21

state agency and subject to Fl. Stat. § 112.3187.

68. All other Defendants, as subsidiaries of The Walt Disney Company and as the entities through which The Walt Disney Company engages in its business in Florida, including within the jurisdiction of the RCID, are collectively, together with The Walt Disney Company, a local Florida public entity and governmental agency, subject to Fl. Stat. § 112.3187.

69. The Florida Whistle-blower's Act prohibits a public entity "from taking retaliatory action against an employee who reports to an appropriate agency violations of law." Fl. Stat. § 112.3187(2). An agency "shall not dismiss, discipline, or take any other adverse personnel action…[nor] take any adverse action that affects the rights or interest of a person in retaliation for the person's disclosure of information" identified in the Act. *Id.* at (4)(a)-(b).

70. The Act covers disclosure of information that includes:

   a. Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee of an agency which creates and presents a substantial and specific danger to the public's health, safety, or welfare.

   b. Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds…or gross neglect of duty committed by an employee or agent of an agency.

   Fl. Stat. § 112.3187(5).

71. The employee's disclosure of protected information concerning a local

22

governmental entity, including a public entity such as Disney, must be to the chief executive officer (Fl. Stat. § 447.203(9)) or other appropriate local officials. Fl. Stat. § 112.3187(6). The "other appropriate local officials," include supervisors and upper management for Plaintiff.

72. The Act protects employees "who refuse to participate in any adverse action prohibited by this section" and "file any written complaint to their supervisory officials." Fl. Stat. § 112.3187(7).  "Adverse personnel action" means the discharge, suspension, transfer, or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or any other adverse action taken against an employee within the terms and conditions of employment by an agency or independent contractor.  §112.3187(3)(c).

73. Mr. Schmidt provided written notice to Disney of Disney's unlawful vaccine mandate and requested that a Disney manager sign a document holding Disney liable for any subsequent injury he would suffer as a result of being coerced to take the shot.

74. Mr. Schmidt has filed his claims under oath of religious discrimination and retaliation before the Florida Commission on Human Relations and/or EEOC, or both concurrently.

75. Disney was provided ample time to remediate its unlawful conduct, and refused to do so, instead doubling-down on unlawful conduct and retaliation against Mr. Schmidt, suspending him "pending investigation."

76. Mr. Schmidt's requests for Disney to address his concerns and cease its

discriminatory policies went unanswered.

77. Mr. Schmidt never had a proper investigation of his claims and was subsequently terminated on pretextual grounds. Disney's suspension and termination of Plaintiff is retaliatory for his vocal and persistent, lawful challenges to Disney's unlawful conduct.

78. Mr. Schmidt has exhausted his administrative remedies prior to bringing this claim before this Court. Fl. Stat. § 112.3187(8).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

## COUNT III
## DISCRIMINATION CONTRARY TO FLORIDA CIVIL RIGHTS ACT
## FL STAT § 760.07, § 760.10
### *Against All Defendants*

79. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

80. The Florida Civil Rights Act ("FL CRA") prohibits an employer from discriminating against an employee "because of race, color, religion, gender, pregnancy, national origin, age, handicap, or marital status in the areas of education, employment, or public accommodations." Fl. Stat. § 760.07.

24

81. Prohibited employment practices include:

a.  "(1)(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

b.  "(1)(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

c.  "(2) to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status or to classify or refer for employment any individual on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

d.  "(6) to print, or cause to be printed or published, any notice or advertisement relating to employment, membership, classification, referral for employment, or apprenticeship or other training, indicating any preference, limitation, specification, or discrimination, based on

race, color, religion, sex, pregnancy, national origin, age, absence of handicap, or marital status."

Fl. Stat. § 760.10.

82. Disney is subject to FL CRA, as an employer "employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year…." Fl. Stat. § 760.02(7).

83. Disney engaged in prohibited employment practices under FL CRA by imposing a covid-19 vaccine mandate which threatened to fire and refused to hire individuals because of their religious belief against covid-19 vaccination and Disney's perception of their "handicap" relating to or arising from their lack of Covid-19 vaccination.

84. Disney engaged in prohibited employment practices under FL CRA when, upon refusing to process or respond to Mr. Schmidt's religious exemption request, Disney unlawful terminated his employment.

85. Disney engaged in prohibited employment practices under FL CRA when, upon Florida law prohibiting Covid-19 vaccinate-or-terminate mandates went into effect, Disney began a program under "Augmented Health & Safety Protocols" by which Mr. Schmidt, whose religious beliefs prohibited taking the Covid-19 vaccine, would be segregated and classified apart from other Disney cast and forced to wear specific facial coverings, including respirators and other PPE, or face discipline and termination.

86. Disney engaged in prohibited employment practices under FL CRA when it

26

perceived Mr. Schmidt as disabled and unable to complete the functions of his job in his medical status and unlawfully terminated his on the basis of this perception.

87. Disney engaged in prohibited employment practices under FL CRA by applying the discriminatory and humiliating Augmented Protocols against Mr. Schmidt, because it perceived Plaintiff as disabled and unable to complete the functions of his job in his medical status and therefore unlawfully segregated and classified him apart from other Disney cast and forced him to wear specific facial coverings, including respirators and other PPE, or face discipline and termination.

88. Even though Mr. Schmidt clearly posed no health threat to Florida Disney employees, Disney treated Mr. Schmidt as though he were a continually contagious vector of disease and dangerous.

89. Indeed, Disney's improper "cherry-picking" of OSHA Rules and guidelines regarding industrial environment hazards and toxic materials to force only those cast like Plaintiff whom Disney perceived as disabled and dangerous to wear PPE for extended periods without respite illustrates Disney's true sentiment and message that Mr. Schmidt *is* the toxic substance or environmental hazard in the Disney workplace.

90. Disney's unlawful discrimination is the direct and proximate cause of deprivation of Mr. Schmidt's equal employment opportunities and his economic and non-economic damages.  Disney's unlawful conduct has caused Plaintiff damages,

27

including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other cast members for his religious beliefs and perceived disability.

91. Disney's misconduct was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle him to an award of punitive damages against Disney, to deter it, and others, from such conduct in the future.

92. Plaintiff has exhausted his administrative remedies prior to bringing this claim before this Court.  Fl. Stat. § 760.11.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

## COUNT IV
## RETALIATION CONTRARY TO FLORIDA CIVIL RIGHTS ACT
## FL STAT § 760.10(7), § 760.10
### *Against All Defendants*

93. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

94. The Florida Civil Rights Act ("FL CRA") prohibits an employer's

"discriminat[ing] against any person because that person has opposed any

28

practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section..” Fl. Stat. § 760.10(7).

95. Disney is subject to FL CRA, as an employer “employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year….”  Fl. Stat. § 760.02(7).

96. Mr. Schmidt provided written notice to Disney of Disney’s unlawful vaccine mandate and requested that a Disney manager sign a document holding Disney liable for any subsequent injury he would suffer as a result of being coerced to take the shot.

97. Mr. Schmidt has filed his claims under oath of religious discrimination and retaliation before the Florida Commission on Human Relations and/or EEOC, or both concurrently.

98. Disney was provided ample time to remediate its unlawful conduct, and refused to do so, instead doubling-down on unlawful conduct and retaliation against Mr. Schmidt, suspending him “pending investigation.”

99. Mr. Schmidt’s requests for Disney to address his concerns and cease its discriminatory policies went unanswered.

100. Mr. Schmidt never had a proper investigation of his claims and was subsequently terminated on pretextual grounds.  Disney’s suspension and termination of Plaintiff is retaliatory for his vocal and persistent, lawful

challenges to Disney's unlawful conduct.

101. Disney's unlawful retaliation is the direct and proximate cause of deprivation of Plaintiff's equal employment opportunities and his economic and non-economic damages. Disney's unlawful conduct has caused Plaintiff damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other cast members for his religious beliefs and perceived disability.

102. Disney's misconduct was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle him to an award of punitive damages against Disney, to deter it, and others, from such conduct in the future.

103. Plaintiff has exhausted his administrative remedies prior to bringing this claim before this Court. Fl. Stat. § 760.11.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate their employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

**COUNT V**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AS AMENDED ("TITLE VII") 42 U.S.C. §§ 2000e,** *et seq*;
**DISCRIMINATION ON THE BASIS OF**
**RELIGIOUS BELIEF AND PRACTICE**
*Against all Defendants*

104. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

105. Title VII (42 U.S.C. § 2000e-2(a)) provides that:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

106. Religion under the statute "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). It is well established in the law that part of religious observance and practice may involve refusal of medical treatment and vaccination.

107. At all relevant times to the allegations in this Complaint, Disney is an employer maintaining a minimum of fifteen employees and is engaged in an industry affecting commerce, pursuant to 42 U.S.C. §2000e(b), (g), (h) and 42 U.S.C.

31

§12111(2), (5).

108. Disney engaged in prohibited employment practices under Title VII by imposing a covid-19 vaccine mandate which threatened to fire and refused to hire individuals because of their religious belief against covid-19 vaccination.

109. Disney engaged in prohibited employment practices under Title VII when, upon refusing to process or respond to Mr. Schmidt's religious exemption request, Disney unlawfully terminated his employment.

110. Disney engaged in prohibited employment practices under Title VII when, upon Florida law prohibiting Covid-19 vaccinate-or-terminate mandates went into effect, Disney began a program under "Augmented Health & Safety Protocols" by which Mr. Schmidt, with religious beliefs prohibiting taking the Covid-19 vaccine, would be segregated and classified apart from other Disney cast and forced to wear specific facial coverings, including respirators and other PPE, or face discipline and termination.

111. Disney's unlawful discrimination is the direct and proximate cause of deprivation of Mr. Schmidt's equal employment opportunities and his economic and non-economic damages. Disney's unlawful conduct has caused Plaintiff damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other cast members for his religious beliefs.

112. Disney's misconduct was so willful and wanton and in such reckless disregard

32

of the statutory rights of Mr. Schmidt so as to entitle him to an award of punitive damages against Disney, to deter it, and others, from such conduct in the future.

113. Plaintiff has exhausted his administrative remedies prior to bringing this claim before this Court.  42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

**COUNT VI**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AS AMENDED ("TITLE VII") 42 U.S.C. §§ 2000e, *et seq*;**
**RETALIATION**
*Against All Defendants*

114. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

115. Title VII (42 U.S.C. § 2000e-3(a)) prohibits retaliation against an employee for opposing an employer's unlawful action prohibited by Title VII: "It shall be an unlawful employment practice for an employer… to discriminate against any individual… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this subchapter."

116. At all relevant times to the allegations in this Complaint, Disney is an employer maintaining a minimum of fifteen employees and is engaged in an industry affecting commerce, pursuant to 42 U.S.C. §2000e(b), (g), (h) and 42 U.S.C. §12111(2), (5).

117. Mr. Schmidt provided written notice to Disney of Disney's unlawful vaccine mandate and requested that a Disney manager sign a document holding Disney liable for any subsequent injury he would suffer as a result of being coerced to take the shot.

118. Mr. Schmidt has filed his claims under oath of religious discrimination and retaliation before the Florida Commission on Human Relations and/or EEOC, or both concurrently.

119. Disney was provided ample time to remediate its unlawful conduct, and refused to do so, instead doubling-down on unlawful conduct and retaliation against Mr. Schmidt, suspending him "pending investigation."

120. Mr. Schmidt's requests for Disney to address his concerns and cease its discriminatory policies went unanswered.

121. Mr. Schmidt never had a proper investigation of his claims and was subsequently terminated on pretextual grounds. Disney's suspension and termination of Plaintiff is retaliatory for his vocal and persistent, lawful challenges to Disney's unlawful conduct.

122. Disney's unlawful retaliation is the direct and proximate cause of deprivation of

Plaintiff's equal employment opportunities and his economic and non-economic damages. Disney's unlawful conduct has caused Plaintiff damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other cast members for her religious beliefs.

123. Disney's misconduct was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle him to an award of punitive damages against Disney, to deter it, and others, from such conduct in the future.

124. Plaintiff has exhausted his administrative remedies prior to bringing this claim before this Court. 42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay each Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

## COUNT VII
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED ("ADA") 42 U.S.C. §§ 12111, *et seq*; DISCRIMINATION ON THE BASIS OF PERCEIVED DISABILITY
### *Against All Defendants*

125. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

126. Mr. Schmidt is a "qualified individual" who was an employee of Disney, as defined under the ADA. 42 U.S.C. § 12111(4), (8).  Plaintiff performed the essential functions of his position admirably for the span nearly ten years , and prior to its Covid-19 vaccine mandate imposed in July 2021, Plaintiff performed the essential functions of his position using Disney's universally applied Covid-19 safety policies for protection.

127. At all relevant times to the allegations in this Complaint, Disney is an employer maintaining a minimum of fifteen employees and is engaged in an industry affecting commerce, pursuant to 42 U.S.C. §2000e(b), (g), (h) and 42 U.S.C. §12111(2), (5).

128. The ADA prohibits discrimination against disabled persons in the employment context.  An employee is considered to have a disability if he or she: has "(A) a physical or mental impairment that substantially limits one or more of that person's major life activities; (B) has a record of such impairment; or (C) is regarded as having such an impairment…." 42 U.S.C § 12102(1).

129. To establish a disability under the third definition, being regarded as having an impairment, the ADA provides:

(A) An individual meets the requirement of "being regarded as having such an

36

impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 SC § 12102(3).

130. At all relevant times material to this action, Covid-19 was a well-known, highly contagious, and sometimes deadly virus that has resulted in a global pandemic. Furthermore, Disney's strictly enforced vaccinate-or-terminate policy for Covid-19 injections confirms its position that Covid-19 infection and transmission is a serious, ongoing concern.

131. Mr. Schmidt objected to Disney's mandatory covid-19 vaccination, submitting his request for religious exemption, and being willing to discuss reasonable accommodation with Disney, if Disney had been willing to do so.

132. Disney engaged in prohibited employment practices under ADA by imposing a covid-19 vaccine mandate which threatened to fire and refused to hire individuals because of Disney's perception of their "handicap" relating to or arising from their lack of Covid-19 vaccination.

133. Disney engaged in prohibited employment practices under the ADA when it perceived Mr. Schmidt as disabled and unable to complete the functions of his job in his medical status and unlawfully terminated him on the basis of this perception.

134. Disney engaged in prohibited employment practices under ADA by applying the discriminatory and humiliating Augmented Protocols against Plaintiff because it perceived Mr. Schmidt as disabled and unable to complete the functions of his job in his medical status and therefore unlawfully segregated and classified his apart from other Disney cast and forced him to wear specific facial coverings, including respirators and other PPE, or face discipline and termination.

135. Even though Plaintiff clearly posed no health threat to Florida Disney employees, Disney treated Mr. Schmidt as though he was a continually contagious vector of disease and dangerous.

136. Indeed, Disney's improper "cherry-picking" of OSHA Rules and guidelines regarding industrial environment hazards and toxic materials to force only those cast like Plaintiff whom Disney perceived as disabled and dangerous to wear PPE for extended periods without respite illustrates Disney's true sentiment and message that Mr. Schmidt *is* the toxic substance or environmental hazard in the Disney workplace.

137. Disney's assumption of Plaintiff's risk in the workplace is not based on any reasonable understanding of the facts regarding his ability to perform his essential job duties with or without accommodation.  Defendant failed to make any individualized risk assessment regarding Mr. Schmidt's perceived disability.  There was no factual support for the idea that Plaintiff could not perform his essential job duties as he had for nearly ten years, and in fact during the Covid-

19 pandemic.

138. Disney's unlawful discrimination is the direct and proximate cause of deprivation of Mr. Schmidt's equal employment opportunities and his economic and non-economic damages. Disney's unlawful conduct has caused Plaintiff damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other cast members for a perceived disability.

139. Disney's conduct was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle him to an award of punitive damages against Disney, to deter it, and others, from such conduct in the future.

140. Plaintiff has exhausted his administrative remedies prior to bringing this claim before this Court. 42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

## COUNT VIII
## VIOLATION OF THE ADA, 42 U.S.C. §§ 12203;
## PROHIBITED RETALIATION AND COERCION
### *Against All Defendants*

141. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

142. Mr. Schmidt is a "qualified individual" who was an employee of Disney, as defined under the ADA. 42 U.S.C. § 12111(4), (8).

143. At all relevant times to the allegations in this Complaint, Disney is an employer maintaining a minimum of fifteen employees and is engaged in an industry affecting commerce, pursuant to 42 U.S.C. §2000e(b), (g), (h) and 42 U.S.C. §12111(2), (5).

144. The ADA prohibits retaliation and coercion for protected activities:

> (a) Retaliation
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

> (b) Interference, coercion, or intimidation
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

145. Mr. Schmidt provided written notice to Disney of Disney's unlawful vaccine mandate and requested that a Disney manager sign a document holding Disney liable for any subsequent injury he would suffer as a result of being coerced to

40

take the shot.

146. Mr. Schmidt has filed his claims under oath of religious discrimination and retaliation before the Florida Commission on Human Relations and/or EEOC, or both concurrently.

147. Disney was provided ample time to remediate its unlawful conduct, and refused to do so, instead doubling-down on unlawful conduct and retaliation against Mr. Schmidt, suspending him "pending investigation."

148. Mr. Schmidt's requests for Disney to address his concerns and cease its discriminatory policies went unanswered.

149. Mr. Schmidt never had a proper investigation of his claims and was subsequently terminated on pretextual grounds.  Disney's suspension and termination of Plaintiff is retaliatory for his vocal and persistent, lawful challenges to Disney's unlawful conduct.

150. Disney's unlawful retaliation is the direct and proximate cause of deprivation of Plaintiff's equal employment opportunities and hid economic and non-economic damages.  Disney's unlawful conduct has caused Plaintiff damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other cast members for his religious beliefs.

151. Disney's misconduct was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiff so as to entitle him to an award of punitive

41

damages against Disney, to deter it, and others, from such conduct in the future.

152. Plaintiff has exhausted his administrative remedies prior to bringing this claim before this Court.  42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, order Disney to reinstate his employment, order Disney to remove disciplinary documentation in Plaintiff's file related to Covid-19 vaccine mandate or compliance with Augmented Protocols, order Disney to cease enforcement of the unlawful Augmented Protocols against all cast members, and order Disney to pay Plaintiff lost wages, any lost benefits, pay attorneys fees and costs, and pay any other such relief as allowed by law and the Court deems just and proper.

## COUNT IX
## DECLARATORY JUDGMENT
## DISNEY VIOLATED EMPLOYEES' FLORIDA CONSTITUTIONAL RIGHT TO PRIVACY ART I, § 23.

153. Paragraphs 1-57 are hereby incorporated by reference as if fully restated.

154. As pled in this Complaint, Defendant The Walt Disney Company, by virtue of its total control and ownership over local Florida public entity and governmental agency RCID, is a state agency and subject to limitations and obligations of public entities under the Florida Constitution.

155. All other Defendants, as subsidiaries of The Walt Disney Company and as the entities through which The Walt Disney Company engages in its business in Florida, including within the jurisdiction of the RCID, are collectively, together with The Walt Disney Company, a local Florida public entity and governmental

agency, subject to Florida's constitutional restrictions.

156. Disney's vaccinate-or-terminate mandate is unlawful because

- it violates the Plaintiff's constitutional right to privacy and bodily autonomy guaranteed by the Florida Constitution, Article I, Section 23;

- it violates the Plaintiff's constitutional right to due process and equal protection of the law guaranteed by the Florida Constitution Article I, Sections 2 and 9;

- it interferes with Plaintiff's exercise or enjoyment of constitutional and statutory rights using threats, intimidation, or coercion - Fl. Stat. § 760.51;

- it violates Fl. Stat. § 381.00315, which grants sole governmental authority in Florida to issue vaccine mandates to the "State Health Officer;"

- it violates Fl. Stat. §§ 381.0016, 112.0441, which forbid local governments and public employers from imposing vaccine mandates on their employees; and

- it is not narrowly tailored to serve a compelling public health or safety purpose as is required under Fl. Stat. § 252.38(4)(b).

157. There is a *bona fide*, actual, present and practical need for the declaration. Disney's violation of law is capable of repetition, but evading review. Disney continued to impose a Covid-19 vaccine mandate against all recruits and new hires at until August of 2022, when it ostensibly dropped its vaccine mandates. Disney justified its actions at all times relevant to the facts of this Complaint

and indicated it had the authority to enforce at any time any manner of Covid-19 mandates: "These protocols are subject to change at any time." **Exhibit F** While Disney "paused" enforcement of its Covid-19 vaccine mandate in November 2021, the law which stayed Disney's enforcement is set to expire in 2023, without legislative action.

158. The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to whether the Disney's vaccinate-or-terminate mandate violates Mr. Schmidt's constitutional liberties and is otherwise unlawful.

159. An immunity, power, privilege or right of Mr. Schmidt is dependent on the facts or the law applicable to the facts.

160. Mr. Schmidt and Disney have, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in law or in fact.

161. The antagonistic and adverse interests are all properly before the Court.

162. The relief sought is not merely the giving of legal advice or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiff seeks a declaratory judgment stating that Disney's Covid-19 vaccinate-or-terminate mandate violates Plaintiff's privacy rights under the Florida constitution and is otherwise unlawful; and an award to Plaintiff for his attorney's fees and costs; and order all such further relief as the Court deems necessary and just.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demand a trial by jury on all issues so triable.

Dated this 14th day of February, 2023.

_____/S/ Rachel L.T. Rodriguez_____
RACHEL L.T. RODRIGUEZ, ESQ.
Florida Bar Number:110425
VIRES LAW GROUP, PLLC
515 N. Flagler Dr. Ste P300
West Palm Beach, FL 33401
(561) 370-7383
rrodriguez@vireslaw.group


_____/S/ Carroll G. Sanders_____
CARROLL G. SANDERS, ESQ.
Florida Bar Number: 52846
CGS LAW, P.A.
1101 E Cumberland Ave, Ste. 201H-133
Tampa, Florida 33602
(813) 279-8491
Carroll@CGSLAW.org

*Attorneys for Plaintiff*